**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

TANNER A. SONG,

                Plaintiff,

    v.

ANDREW M. SAUL, Commissioner of Social Security,

                Defendant.

Case No. 2:20-cv-01110-DJA

**ORDER**

      This matter involves the review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Tanner A. Song's ("Plaintiff") application for disability insurance benefits under Title II of the Social Security Act. The Court has reviewed Plaintiff's Motion for Reversal and/or Remand (ECF No. 18), filed on November 12, 2020, the Commissioner's Response and Cross-Motion to Affirm (ECF Nos. 20-21), filed on December 14, 2020, and Plaintiff's Reply (ECF No. 22), filed on January 2, 2021. The Court finds this matter properly resolved without a hearing. LR 78-1.

**I.     BACKGROUND**

      **1.     Procedural History**

      Plaintiff protectively applied for disability insurance benefits on June 2, 2015, alleging an onset date of April 16, 2015. AR[1] 207-208. Plaintiff's claim was denied initially and on reconsideration. AR 100-103 and 107. A hearing was held before an Administrative Law Judge ("ALJ") on February 5, 2019. AR 38-59. On May 14, 2019, the ALJ issued a decision denying

---

[1] AR refers to the Administrative Record in this matter. (Certified Administrative Record (ECF No. 16)).

1   Plaintiff's claim.  AR 12-32.  The ALJ's decision became the Commissioner's final decision

2   when the Appeals Council denied review on April 22, 2020.  AR 1-6.  On June 18, 2020, Plaintiff

3   commenced this action for judicial review under 42 U.S.C. §§ 405(g).  (*See* Complaint (ECF No.

4   1)).

5                **2.      The ALJ Decision**

6          The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§

7   404.1520.  AR 15-27.  At step one, the ALJ found that Plaintiff was insured through December

8   31, 2018 and had not engaged in substantial gainful activity from the alleged onset date of April

9   16, 2015 through the date last insured.  *Id.* at 18.  The ALJ considered evidence prior to or after

10  the period at issue (4/6/15 – 12/31/18) for context and consistency reasons.  AR 15.  At step two,

11  the ALJ found that Plaintiff had medically determinable "severe" impairments of anterolisthesis

12  and left wrist tendonitis and non-severe impairment of history of chronic obstructive pulmonary

13  disease.  *Id*.  He rated all of the paragraph B criteria as no, mild, mild, and mild limitations.

14         At step three, the ALJ found that Plaintiff did not have an impairment or combination of

15  impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P,

16  Appendix 1.  *Id*. at 20.  He specifically noted that he considered listings 1.02 and 1.04 and

17  explained why they were not met.

18         The ALJ found that Plaintiff has the residual functional capacity to perform a reduced

19  range of sedentary work as defined in 20 CFR 404.1567(a) except that she is limited to: lifting or

20  carrying up to 20 pounds occasionally and 10 pounds frequently; standing and walking for two

21  hours in an eight-hour period; sitting for six hours in an eight-hour period; occasionally pushing

22  and pulling with the left upper extremity; is unable to climb ladders, ropes, or scaffolds;

23  occasionally climbing ramps or stairs; occasionally balancing, stooping, kneeling, or crouching; is

24  unable to crawl; frequently handling bilaterally; and tolerating no more than occasional exposure

25  to extreme cold, vibration, fumes, odors, dust, gases, poor ventilation or hazards.  AR 20-21.

26         At step four, the ALJ found that Plaintiff could not perform any past relevant work.  *Id.* at

27  24-25.  At step five, the ALJ found that Plaintiff was an individual closely approaching advanced

28  age on the date last insured and subsequently changed age category to advanced age, has at least a

high school education, is able to communicate in English, has transferable work skills from her past relevant work as a booking manager with Specific Vocational Preparation (SVP) code of five including customer service, computer application, organization skills, and data entry.  AR 25. Considering her age, education, work experience, and RFC, along with the transferrable skills, the ALJ utilized section 204.00 in the Medical-Vocational Guidelines and found that there were jobs that exist in significant numbers in the national economy that she could perform.  For example, the Vocational Expert (VE) testified that Plaintiff could perform as a telephone sales representative, receptionist, and information clerk.  Accordingly, the ALJ concluded that Plaintiff was not under a disability at any time from April 16, 2015 through the date last insured, December 31, 2018.  *Id.* at 26.

## II.    DISCUSSION

### 1.    Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g).  *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g) states: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides."  The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  *Id.*  The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo.  *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193.  When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.  It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence.  Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).  The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2.      Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  More specifically, the individual must provide "specific medical evidence" in support of his/her claim for disability.  20 C.F.R. § 404.1514.  If the individual establishes an inability to perform his/her prior work, then the burden

shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he/she can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to the step two. Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20 C.F.R. § 404.1520(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R. § 404.1520(e); see also SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 16-3p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform his/her past relevant work ("PRW").  20 C.F.R. § 404.1520(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b) and 404.1565.  If the individual has the RFC to perform his past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his/her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If he/she is able to do other work, then a finding of not disabled is made.  Although

the individual generally continues to have the burden of proving disability at this step, a limited

burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is

responsible for providing evidence that demonstrates that other work exists in significant numbers

in the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

### 3.     Analysis

#### a.     Whether the ALJ's RFC Finding Is Supported

Plaintiff contends that the ALJ improperly substituted his lay opinion for Dr. Araza's

opinion and Dr. Winkelman's opinion as to the severity of Plaintiff's mental impairment and thus,

the RFC's lack of mental limitations is not supported by substantial evidence.  (ECF No. 18, 9).

She claims that the ALJ failed to cite any contradictory medical evidence to justify dismissing the

other opinions that: (1) found her anxiety and somatic disorders to be severe; and (2) opined that

she would have moderate difficulty interacting with supervisors and peers along with moderate

difficulty responding consistently and appropriately to work pressure in a work setting and

working in coordination or close proximity to others without conflict, distress, confusion, or

distraction.  (*Id.* at 10-14).  Plaintiff also argues that the lack of mental limitations in the RFC

resulted in an improper hypothetical question to the VE.  (*Id.* at 14-16).  As a result, Plaintiff

claims that remand is required for further evaluation of the impact of Plaintiff's ability to perform

the jobs identified at step five or even an award of benefits is justified.  (*Id.* at 16-17).

The Commissioner responds that Plaintiff's challenge is limited to the opinions of Dr.

Araza and Dr. Winkleman and the ALJ's transferable skills finding at step five.  (ECF No. 21, 10-

11).  As such, the Commissioner notes that Plaintiff waived any challenge to her credibility or

other issues.  Further, the Commissioner contends that the ALJ considered the opinions of Dr.

Winkleman and Dr. Araza, but found their assessed mental limitations were not supported by the

record.  The Commissioner highlights that the ALJ provided good reasons for rejecting them by

assigning them little weight because they were not consistent with (1) the unremarkable mental

examinations during the relevant period and (2) the fact that Plaintiff's mental impairments were

well-controlled with medication.  (*Id.* at 12-14).  Further, the Commissioner argues that the ALJ

also cited to the examination by neurologist Dr. Tausch that showed no deficits in short term

memory, normal speech, and no decreased attention span.  (*Id.* at 14).  The Commissioner argues that the ALJ did not substitute his opinion for Dr. Araza and Dr. Winkleman as he did not go outside the record to make his own assessment.  Instead, the ALJ performed his job in weighing the evidence as arbiter of conflicts of evidence in the record.  (*Id.* at 15-16).  Finally, the Commissioner argues that the ALJ did not have to include mental limitations in his hypothetical to the VE so the RFC finding is supported.  (*Id.* at 16-17).

Plaintiff replies that the ALJ failed to explain his reasons for rejecting all of Dr. Winkelman's specific mental limitations.  (ECF No. 22, 2).  Further, Plaintiff claims that Dr. Winkleman's examination report shows objective abnormalities, which contradicts the ALJ's statement that Plaintiff had normal and unremarkable mental status findings during the relevant period.  (*Id.* at 3).  Similarly, Plaintiff contends that the ALJ also ignored parts of Dr. Araza's opinion, which is consistent with Dr. Winkleman's opined limitations, and requires remand to determine if the VE would find that Plaintiff could still work with mental limitations that the ALJ found credible and did not include in the hypothetical question.  (*Id.* at 4-6).

Here, the ALJ gave a thorough summary of the medical evidence and objective findings in the record that contradicted state agency psychologist Dr. Araza and consultative examining psychologist Dr. Winkleman's opinions.  AR 18-24.  Specifically, he noted that he assigned them little weight because they were inconsistent with the normal and unremarkable mental status findings during the relevant time period and her symptoms were well-controlled by medication.  AR 19-20.  In fact, the ALJ gave a long cite of exact exhibits and pages in the medical evidence of record that showed that Plaintiff's mental impairments did not cause any significant limitations on her mental functioning.  AR 20.  Indeed, Plaintiff showed no abnormal psychiatric signs on examination in April 2015 and her examination from July 2016 included a report that she experienced increased depression due to going off her medication.  AR 502, 488.  Also, progress notes from 2016 through 2018 show normal mental status examinations and Plaintiff's self-report that she was not having symptoms of anxiety, depression or suicidal thoughts.  AR 603-700.

Plaintiff's contention that the ALJ simply ignored parts of their opinions that supported finding more restrictive mental limitations is simply not true.  While he may have disagreed with

1   it, he did not ignore it, and his disagreement is based on contrary medical evidence along with

2   Plaintiff's own self report of her abilities.  Indeed, the ALJ found that Plaintiff's daily activities

3   were not hindered by her mental impairments based on her description that she took her dogs to

4   the dog park, addressed her personal care needs with only minor difficulties, prepared meals,

5   drove a car, went shopping, and handled her own finances.  AR 18-19.  This is a sufficient

6   explanation for the Court to determine the reasons for the weight assigned.  *See Sousa v.*

7   *Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

8         Further, the Court finds no evidence that the ALJ substituted his lay opinion to support his

9   finding that Plaintiff's anxiety and somatic disorders were non-severe and therefore, did not

10  warrant any RFC limitations.  Rather, he explained why he did not simply pro forma adopt Dr.

11  Araza and Dr. Winkleman's opinions in analyzing the B criteria and assigning mild limitations in

12  3 of the 4 areas of mental functioning.  Although Plaintiff contends that step two is a de minimis

13  inquiry, the Court is not persuaded that the ALJ erred in finding Plaintiff's mental impairments to

14  have no more than minimal effect on her ability to work based on the evidence of record.

15  Plaintiff seeks to transform step two into an open gate in which any self-reported impairment

16  qualifies as severe.  Under these circumstances, the ALJ's step two and RFC findings are entitled

17  to deference.  *See Lewis v. Astruethe*, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f evidence is

18  susceptible of more than one rational interpretation, the decision of the ALJ must be upheld.").

19        Additionally, the Court is not convinced that the ALJ's hypothetical question to the VE is

20  fatally flawed simply because he did not include the mild limitations from the B criteria finding.

21  Plaintiff highlights that the VE testified that Plaintiff would not be able to perform any of the jobs

22  identified at step five if she were limited to simple, routine, repetitive tasks.  However, what

23  Plaintiff is missing is the fact that the RFC does not contain such a mental limitation.  As such,

24  the Court does not agree with Plaintiff that remand is required for further evaluation of whether

25  mild limitations in the B criteria erode the sedentary work identified at step five.  The ALJ asked

26  the VE a hypothetical question that accurately reflected the assigned RFC, which is sufficient in

27  this case.  *See Koshak v. Berryhill*, 2018 WL 4519936, at *8 (C.D. Cal. Sept 19, 2018) ("The

28  regulations require the ALJ to consider the limiting effect of all impairments, including those that

are non-severe. The regulations, however, do not require the ALJ to include limitations in the RFC if the record supports a conclusion that the non-severe impairment does not cause a significant limitation in the claimant's ability to work.").  Therefore, the Court finds that the ALJ's step two finding of non-severe mental impairments and RFC finding with no mental limitations is supported by substantial evidence.

### b.   Whether the ALJ's Step Five Finding Is Supported

Plaintiff also argues that the ALJ erred in evaluating Plaintiff's transferrable skills.  (ECF No. 18, 17).  She argues that the ALJ found she could perform light work despite a stand/walk limitation of 2 hours per day.  (*Id*. at 17).  Further, she claims that the ALJ ignored the special transferability rules that apply to an individual of Plaintiff's age.  (*Id*. at 18).  As a result, Plaintiff contends that remand is required for further step five evaluation to consider whether her acquired skills would transfer with little, if any, vocational adjustment.

The Commissioner responds that the ALJ properly found that Plaintiff was not disabled by relying on VE testimony in determining that Plaintiff acquired skills form her past relevant work that were transferable.  (ECF No. 20, 17).  Also, the Commissioner notes that 20 C.F.R. § 404.1568(d)(2) provides the framework for assessing whether an individual has transferable skills and the ALJ is entitled to rely on VE testimony alone to make that assessment.  (*Id*. at 18). Indeed, the Commissioner does not dispute the fact that the agency had to show that there was little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry.  SSR 82-41.  (*Id*).  However, the Commissioner contends that the VE's testimony addresses all three parts of the transferrable skills analysis set out in the regulations along with the additional component of degree of vocational adjustment involved.

Plaintiff replies that the Commissioner has conceded that the assigned RFC is sedentary and the special rules regarding transferability of skills are to be utilized here.  (ECF No. 22, 7). She argues that the ALJ did not provide any analysis of transferability of skills, which is particularly significant here because she is of advanced age and the issue of transferability is dispositive.  (*Id*. at 7-8).  As such, Plaintiff claims that remand is necessary.  (*Id*. at 9).

Here, the ALJ expressly assigned a reduced sedentary RFC (AR 20) and asked the VE a hypothetical question about the erosion of the sedentary base due to the assigned physical limitations.  (AR 25).  Plaintiff somehow attempts to describe the ALJ as assigning a light RFC. However, there is no dispute that the standing/walking limitation translates to a sedentary exertional limit.  The Court finds that the ALJ's decision properly reflects that Plaintiff was assigned a reduced sedentary RFC and the step five consideration was based on the erosion of the sedentary occupational base.

Further, Plaintiff insists that once Plaintiff moved age categories to a person of advanced age, then the special transferability rules needed to be analyzed.  Importantly, Plaintiff was an individual closely approaching advanced age on the date last insured.  While anything after that date provides context, if she was not found disabled prior to the DLI (as this is solely a Title II application), then her change after the DLI is not dispositive on the relevant period at issue. Additionally, the ALJ is entitled to rely on the VE's expertise with respect to whether Plaintiff's skills were transferable.  *See Bayliss v. B*arnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (a VE's "recognized expertise provides the necessary foundation for his or her testimony" and "no additional foundation is required").  There is sufficient VE testimony on all three parts of the transferability analysis.

As for the first part of same or lesser degree of skill, the VE testified that Plaintiff acquired a number of skills from her past relevant work as a booking manager (skilled job with SVP 5) that were transferable to other sedentary work and identified jobs that were lower SVP levels of 3 or 4.  AR 53-56.  The VE also testified on the second and third parts of same or similar tools and machines and same or similar raw materials, products, processes, or services involved by explaining the jobs identified would require little, if any, adjustment in terms of tools, work processes, work setting and industry.  AR 56.  The ALJ also recognized Plaintiff's age change by asking for testimony from the VE about vocational adjustment because of her age change.  AR 56.  The VE responded that the adjustment period would be 30 days.  *Id*.  Based on the transcript, the Court is unable to find that the transferability analysis was entirely lacking to be a harmful error that Plaintiff claims it to be.

Moreover, Plaintiff was represented by counsel at the hearing and had the opportunity to ask additional question to the VE or present alternative DOT information if she desired.  Second-guessing the VE testimony at this point in the appeal based on Work Fields or Materials, Products, Subject Matter, and Services codes is not permitted given the lack of any such effort at the hearing.  *See, e.g., Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ('at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017) (a claimant should challenge a VE's estimates through cross-examination and may submit supplemental evidence to the ALJ of their own job numbers or raise new evidence casting doubt on a VE's job estimates before the Appeals Council).  The Court finds that the ALJ's step five finding is supported by substantial evidence and free from reversible legal error.

## III.    CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (ECF No. 18) is **denied.**

IT IS FURTHER ORDERED that the Commissioner's Cross-Motion to Affirm (ECF No. 20) is **granted.**

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly and close the case.

DATED: February 9, 2021

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE